# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MCMILLIN HOMES CONSTRUCTION, INC.; MCMILLIN HOMES, INC.; MCMILLIN MANAGEMENT SERVICES, LP; SERENO RESIDENTIAL INVESTORS, LLC; and IMPERIAL VALLEY INVESTORS, LLC,<br><br>　　　　　　　　　　Defendants.<br>_____<br><br>AND RELATED COUNTERCLAIM. | CASE NO. 15cv1548 JM(BLM)<br><br>ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; DENYING MOTION TO MODIFY SCHEDULING ORDER TO PERMIT FILING OF AMENDED COMPLAINT; DENYING EX PARTE APPLICATION TO CONTINUE TRIAL |

Defendants McMillin Homes Construction, Inc., McMillin Homes, Inc., McMillin Management Services, LP, Sereno Residential Investors, LLC, and Imperial Valley Investors, LLC (collectively "McMillin") move to dismiss the complaint for lack of subject matter jurisdiction, contending that the amount in controversy is insufficient to establish diversity jurisdiction. Plaintiff St. Paul Mercury Insurance Company ("St. Paul") opposes the motion and separately moves to modify the Scheduling Order and to file a First Amended Complaint ("FAC"). This order also

addresses St. Paul's ex parte request to modify the pretrial and trial dates in the Scheduling Order. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court denies McMillin's motion to dismiss for lack of subject matter jurisdiction, denies the motion to modify the Scheduling Order to permit the filing of a FAC, and denies the ex parte motion to modify the pretrial and trial dates contained in the Scheduling Order.

## BACKGROUND

**The Complaint**

On July 13, 2015, St. Paul commenced this diversity action by alleging three claims for relief: declaratory relief, breach of contract, and equitable reimbursement. For the time period from May 19, 2003 to June 30, 2009, St. Paul issued a commercial general liability policy ("Policy") to Executive Landscape, Inc. McMillin is an additional insured under the Policy. St. Paul's claims arise from the following generally described allegations.

McMillin developed and acted as the general contractor on a project known as "Sereno." On May 12, 2012, various homeowners in the Sereno development, located in the City of Calexico, California, filed a first amended complaint in the lawsuit entitled Yanez v. Sereno Residential Investors, LLC. The homeowners commenced the action in Imperial County Superior Court, alleging several claims for construction defects. The Yanez Action was subsequently consolidated with a related construction defect lawsuit, Vizcarra v. Sereno Residential Investors, LLC (unless otherwise noted, both actions are collectively referred to as the "Yanez Action").

On August 8, 2012, McMillin, through its legal representative Simpson Delmore Greene ("SDG"), tendered the Yanez Action to St. Paul as an additional insured under the Policy. (Compl. ¶16). On December 31, 2012, St. Paul agreed to fully and completely defend McMillin in the Yanez Action as an additional insured under the Policy, subject to a reservation of rights.

On June 26, 2013, St. Paul allegedly asserted its contractual right to retain counsel of its choosing and advised McMillin that it had retained the law firm of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley ("Clapp") to represent and defend McMillin in the Yanez Action. McMillin allegedly refused, and continues to refuse, to accept Clapp as counsel in the Yanez Action.

St. Paul seeks a declaration that (1) St. Paul has the right to control the defense in the Yanez Action; (2) McMillin is not entitled to the appointment of independent counsel under Cal. Civil Code §2860; (3) McMillin breached the Policy by refusing to acknowledge St. Paul's right to control the defense, including the selection of counsel, and (4) St. Paul has no obligation under the Policy to pay any fees or costs incurred by McMillin's retained counsel. The breach of contract claim is based upon allegations that McMillin refused to accept the counsel provided by St. Paul. Finally, the third claim seeks equitable reimbursement for certain defense fees and costs paid by St. Paul.

**The Counterclaims**

On November 12, 2015, McMillin filed the Amended Counterclaim ("ACC"), alleging three claims for relief: (1) declaratory relief; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. As set forth in the complaint, on August 8, 2012, McMillin tendered the Yanez Action to St. Paul. Nearly four months later, on December 31, 2012, St. Paul agreed to defend McMillin in the Yanez Action, subject to a full reservation of rights. (ACC ¶27).

Counter-claimants allege that St. Paul paid only a portion of the defense costs incurred by SDG. On June 26, 2013, ten months after McMillin tendered its defense to St. Paul, St. Paul retained Clapp to represent the defense. (ACC ¶31). Shortly thereafter, on July 22, 2013, McMillin provided St. Paul with a Joint Consent to Representation ("Joint Consent") pursuant to Cal. Civ.Code §2860. When St. Paul did not respond to the Joint Consent, McMillin again provided the Joint Consent to St. Paul on September 4, 2013, and December 13, 2013. On February 24, 2014, St. Paul advised McMillin that it would only pay for defense fees incurred by Clapp, and not

SDG.

At the heart of the counterclaim is the allegation that St. Paul failed to provide an immediate defense upon tender on August 8, 2012, and to appoint independent counsel. (ACC ¶48). The ACC alleges that St. Paul withdrew from participating in McMillin's defense once it requested the association of independent counsel, (ACC ¶58), and St. Paul ignored the conflicts of interests that arose as to who had the right to control McMillin's defense. McMillin also identifies that it and Executive Landscape had sufficient adverse interests to warrant the appointment of independent counsel. Furthermore, McMillin alleges that St. Paul placed its own interests ahead of the insured by (1) failing to provide an immediate defense without proper cause, (2) failing to conduct a reasonable investigation, (3) representing that it would provide a complete defense and then failing to provide one, (4) refusing to consent to joint representation, and (5) using McMillin's request for independent counsel as a pretext for refusing to defend. (ACC ¶64(a) - 64(i)).

## DISCUSSION

**Subject Matter Jurisdiction**

McMillian, pursuant to Fed.R.Civ.P. 12(b)(1), asserts that the amount in controversy is $63,757, less than the $75,000 amount required to establish diversity jurisdiction under 28 U.S.C. §1332(a)(2). St. Paul, as the party asserting federal jurisdiction, bears the burden of establishing by a preponderance of the evidence that the court possesses diversity jurisdiction over the action. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Diversity jurisdiction must exist at the time the lawsuit is commenced; it need not exist earlier, nor continue afterwards. Grupo Dataflux v. Atlas Global Group, LP, 541 U.S. 567, 571 (2004). St. Paul's complaint seeks the return of monies it paid McMillin to fund its defense in the Yanez Action. The pre-complaint total amount paid by St. Paul to assist in McMillin's defense is $63,757. (Ryan Decl. ¶¶3-5; Exhs. A and B).

The court notes that determining the amount in controversy is often an elusive

task because a plaintiff must frequently make an educated, good faith estimate of damages, both current, future, and contingent.  Thus, to warrant dismissal for an inadequately pleaded amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 293, 288-89 (1938).

Here, the court cannot presently conclude to a legal certainty that the amount in controversy is less than the jurisdictional amount.  The undisputed evidence shows that St. Paul paid $63,757 toward the defense costs in the Yanez Action before filing the complaint. Furthermore, Anthony Vandermoore, a claim manager for St. Paul, declares that, based upon his experience and knowledge, he reasonably expected McMillin's defense costs in the Yanez Action to exceed $200,000, potentially subjecting St. Paul to liability in excess of the jurisdictional amount.  (Vandermoore Decl. ¶7).  Such a good faith belief sufficiently supports St. Paul's allegation that the amount in controversy exceeds $75,000.[1]

In sum, the court denies the motion to dismiss for lack of subject matter jurisdiction, subject to a further showing.

**St. Paul's Motion to Modify Scheduling Order and to File Amended Complaint**

St. Paul moves to modify the Scheduling Order to permit the filing of a First Amended Complaint ("FAC").  The Scheduling Order requires that all motions to amend be filed by November 9, 2015.  A Scheduling Order may be modified upon a showing of "good cause." Fed.R.Civ.P. 16(b)(4).  The concept of good cause requires courts to consider (1) the reasons for the failure to comply with the Scheduling Order; (2) prejudice to the parties; and (3) diligence of the parties in seeking to timely amend the Scheduling Order.  See Johnson v. Mammoth Recreations, Inc., 975 F2d. 604, 609 (9th Cir. 1992); AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 952-53

---

[1] The court rejects St. Paul's arguments that the court should consider McMillin's ACC and the request for punitive damages in determining the amount in controversy.  As set forth herein, diversity jurisdiction must exist at the time of filing the complaint; it need not exist earlier, nor continue afterwards. The ACC and request for punitive damages did not exist at the time St. Paul filed the complaint.

(9th Cir. 2006).

St. Paul asserts that, on December 9, 2015, it learned that SDG offered McMillin a $20 per hour discount from its normal rate of $185 per hour. St. Paul asserts that this is a fraudulent practice because insurance companies billed by McMillin did not receive the same discount. St. Paul arguably confirmed the potential fraud claims by serving interrogatories in February 2016. On May 24, 2016, St. Paul filed the present motion to modify the Scheduling Order and to permit the filing of a FAC.

The court concludes that St. Paul fails to establish good cause to modify the Scheduling Order. The Scheduling Order called for all motions to amend to be filed by November 9, 2015, and St. Paul learned of the potential fraud claim on December 9, 2015. Rather than timely moving to amend the Scheduling Order upon learning of the potential claim, St. Paul waited over five months before filing the present motion. Furthermore, St. Paul ignored the May 23, 2016 Scheduling Order deadline for filing all pretrial motions by filing the present motion on May 24, 2016, without court authorization.

St. Paul argues that its participation in the Early Neutral Evaluation and a Rule 16 scheduling conference in late September 2015 demonstrates that it "worked diligently to assist the Court in creating a workable scheduling order." (Motion at p.6:7). This argument misses the mark. St. Paul must affirmatively demonstrate that it acted diligently in pursuing the fraud claim. St. Paul sets forth no satisfactory answer for why it waited over five months before seeking to modify the Scheduling Order. Furthermore, permitting the filing of an amended complaint, which includes a fraud cause of action for the first time, shortly before the September 23, 2016 Pretrial Conference, prejudices McMillin by taking the case in a fundamentally different direction.

In sum, the Motion to Modify the Scheduling Order to permit the filing of the FAC is denied. (Ct. Dkt. 43).

**Ex Parte Application to Modify Scheduling Order**

St. Paul moves ex parte to advance the hearing date on its Motion to Continue Trial and to Modify the Scheduling Order from August 22, 2016, to a date before the expert discovery cut-off date of August 19, 2016. McMillin opposes the motion on the ground that by advancing the hearing date it will be denied sufficient time to oppose to Motion to Continue, currently calendared for hearing on August 22, 2016.

The court denies the ex parte application to shorten time to hear the motion. St. Paul fails to establish good cause to shorten time. St. Paul represents that, after Judge Wanger's withdrawal as an expert in early April 2016, it retained two experts, Jacqueline Vinaccia, Esq. and Carol Langford, Esq. St. Paul represents that these experts are not available for trial on October 25, 2016. However, this is an unsupported statement. St. Paul does not submit a declaration from Ms. Vinaccia to support its argument, and the declaration of Ms. Langford fails to support St. Paul's proposition. Ms. Lombard represents that she serves on the Commission for the Revision of the California Rules of Professional Conduct. She represents that the revised Rules are out for public comment but expects to be occupied through fall 2016 addressing those comments. The declaration fails to establish that she would not be available for a few hours to testify during the trial.[2] The court denies the ex parte application to shorten time to advance the hearing date on the Motion to Continue trial.

## CONCLUSION

In sum, the court denies the motion to dismiss for lack of subject matter jurisdiction, denies the motion to modify the Scheduling Order to permit the filing of

/ / /
/ / /
/ / /
/ / /

---

[2] The court highlights that it is the practice of the court to accommodate the schedules of testifying trial witnesses.

1  the FAC, and denies St. Paul's ex parte application to shorten time on St. Paul's motion
2  to continue the pretrial conference and trial dates.
3      **IT IS SO ORDERED.**
4  DATED: August 10, 2016
5                                          _____
6                                          Hon. Jeffrey T. Miller
                                            United States District Judge
7  cc:      All parties