# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MCMILLIN HOMES CONSTRUCTION, INC.; MCMILLIN HOMES, INC.; MCMILLIN MANAGEMENT SERVICES, LP; SERENO RESIDENTIAL INVESTORS, LLC; and IMPERIAL VALLEY INVESTORS, LLC, <br><br> Defendants. <br>_____<br><br> AND RELATED COUNTERCLAIM. | CASE NO. 15cv1548 JM(BLM) <br><br> ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT |

Plaintiff St. Paul Mercury Insurance Company ("St. Paul") has filed two motions for summary judgment: one for summary judgment on the counterclaims for breach of contract, bad faith, and declaratory relief and the other on the counterclaim for failure to appoint independent counsel. Defendants McMillin Homes Construction, Inc., McMillin Homes, Inc., McMillin Management Services, LP, Sereno Residential Investors, LLC, and Imperial Valley Investors, LLC (collectively "McMillin") oppose the motions. Having carefully considered the matters presented, the court record, and

the arguments of counsel, the court grants the motion for summary judgment with respect to the breach of contract, bad faith, and declaratory relief counterclaims and grants the motion for summary judgment on the independent counsel counterclaim.

## BACKGROUND

<u>The Complaint</u>

On July 13, 2015, St. Paul commenced this diversity action by alleging three claims for relief: declaratory relief, breach of contract, and equitable reimbursement. For the time period from May 19, 2003 to June 30, 2009, St. Paul issued a commercial general liability policy ("Policy") to Executive Landscape, Inc. McMillin is an additional insured under the Policy. St. Paul's claims arise from the following generally described allegations.

McMillin developed and acted as the general contractor on a project known as "Sereno." On May 12, 2012, various homeowners in the Sereno development, located in the City of Calexico, California, filed a first amended complaint in the lawsuit entitled <u>Yanez v. Sereno Residential Investors, LLC</u>. The homeowners commenced the action in Imperial County Superior Court, alleging several claims for construction defects. The <u>Yanez</u> action was subsequently consolidated with a related construction defect lawsuit, <u>Vizcarra v. Sereno Residential Investors, LLC</u> (unless otherwise noted, both actions are collectively referred to as the "<u>Yanez</u> Action").

On August 8, 2012, McMillin, through its legal representative Simpson Delmore Greene ("SDG"), tendered the <u>Yanez</u> Action to St. Paul as an additional insured under the Policy. (Compl. ¶16). On December 31, 2012, St. Paul agreed to fully and completely defend McMillin in the <u>Yanez</u> Action as an additional insured under the Policy, subject to a reservation of rights.

On June 26, 2013, St. Paul allegedly asserted its contractual right to retain counsel of its choosing and advised McMillin that it had retained the law firm of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley ("Clapp") to represent and defend McMillin in the <u>Yanez</u> Action. McMillin allegedly refused, and continues to refuse, to

accept Clapp as counsel in the <u>Yanez</u> Action.

St. Paul seeks a declaration that (1) St. Paul has the right to control the defense in the <u>Yanez</u> action; (2) McMillin is not entitled to the appointment of independent counsel under Cal. Civil Code §2860; (3) McMillin breached the Policy by refusing to acknowledge St. Paul's right to control the defense, including the selection of counsel, and (4) St. Paul has no obligation under the Policy to pay any fees or costs incurred by McMillin's retained counsel. The breach of contract claim is based upon allegations that McMillin refused to accept the counsel provided by St. Paul. Finally, the third claim seeks equitable reimbursement for certain defense fees and costs paid by St. Paul.

<u>The Counterclaims</u>

On November 12, 2015, McMillin filed the Amended Counterclaim ("ACC"), alleging three claims for relief: (1) declaratory relief; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. As set forth in the complaint, on August 8, 2012, McMillin tendered the <u>Yanez</u> Action to St. Paul. Nearly four months later, on December 31, 2012, St. Paul agreed to defend McMillin in the <u>Yanez</u> Action, subject to a full reservation of rights. (ACC ¶27).

Counter-claimants allege that St. Paul paid only a portion of the defense costs incurred by SDG. On June 26, 2013, ten months after McMillin tendered its defense to St. Paul, St. Paul retained Clapp to represent the defense. (ACC ¶31). Shortly thereafter, on July 22, 2013, McMillin provided St. Paul with a Joint Consent to Representation ("Joint Consent") pursuant to Cal. Civ.Code §2860. When St. Paul did not respond to the Joint Consent, McMillin again provided the Joint Consent to St. Paul on September 4, 2013, and December 13, 2013. On February 24, 2014, St. Paul advised McMillin that it would only pay for defense fees incurred by Clapp, and not SDG.

At the heart of the counterclaim is the allegation that St. Paul failed to provide an immediate defense upon tender on August 8, 2012, and to appoint independent counsel. (ACC ¶48). The ACC alleges that St. Paul withdrew from participating in McMillin's defense once McMillin requested the association of independent counsel,

(ACC ¶58), and St. Paul ignored the conflicts of interests that arose as to who had the right to control McMillin's defense.  McMillin also alleges that it and Executive Landscape had sufficient adverse interests to warrant the appointment of independent counsel.  Furthermore, McMillin alleges that St. Paul placed its own interests ahead of the insured by (1) failing to provide an immediate defense without proper cause, (2) failing to conduct a reasonable investigation, (3) representing that it would provide a complete defense and then failing to provide one, (4) refusing to consent to joint representation, and (5) using McMillin's request for independent counsel as a pretext for refusing to defend.  (ACC ¶64(a) - 64(i)).

Settlement of the Yanez Action

St. Paul, First Mercury and National Union Fire Insurance agreed to share costs of defense in the Yanez action. St. Paul paid McMillin's defense fees from the date of tender until the appointment of Clapp. On January 13, 2016, the plaintiffs in the Yanez action and Executive Landscape entered into a settlement agreement and release of all claims.

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

The Breach of Contract Claim

St. Paul moves for summary judgment on McMillin's breach of contract Counterclaim on two different grounds. First, St. Paul asserts that it had the absolute right to control the defense and that it provided McMillin with an immediate, full and complete defense. Second, St. Paul asserts that McMillin suffered no damages because it, and other insurance carriers, paid McMillin's defense costs. The court concludes (1) that no genuine issue of material fact exists and (2) summary judgment should be granted in favor of St. Paul on the counterclaims.

The parties do not dispute that California law, with respect to the duty to defend, generally gives the insurer the right to control the defense and the insured is required to surrender control over the defense. See Gribaldo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges A.G., 3 Cal.3d 434, 449 (1970). Here, on August 8, 2012, McMillin, through its counsel SDG, tendered the Yanez Action to St. Paul. By letter dated August 27, 2012, St. Paul requested the following information in order to complete its coverage investigation: an executed subcontract between McMillin and

1  Executive Landscape; a scope of work matrix showing which homes Executive
2  Landscape worked on; a defect list; a cost of repair list; the date McMillin first learned
3  of the Yanez Action; and whether there was a wrap-up policy in place for the project.
4  Following this exchange of letters, St. Paul and McMillin continued their
5  communications and, on November 2, 2012, McMillin provided the subcontract and
6  homeowners' matrix. On November 20, 2012, St. Paul received additional requested
7  documentation including, job cost sheets, and Executive Landscape subcontracts. There
8  is no dispute that, on December 31, 2012, St. Paul accepted the defense of the Yanez
9  Action, subject to a reservation of rights.

10  McMillin contends that the time period between tender (August 8, 2012) and
11  acceptance of the defense (December 31, 2012) breaches St. Paul's duty to provide a
12  timely, full, and complete defense. While McMillin contends that this four and one-half
13  period is unreasonable, the record does not support McMillin's contentions.

14  Black letter law provides that insurers are entitled to a reasonable period of time
15  to investigate claims to determine coverage issues. See Cal. Shoppers Inc. v. Royal
16  Globe Ins. Co, 175 Cal.App.3d 1, 38 (1985). The time period between the tender on
17  August 8, 2012, and the provision by McMillin of documents to St. Paul (necessary
18  materials relevant to determining coverage issues) on November 2, 2012, and again on
19  November 20, 2012, is not considered in determining whether an insurer breached its
20  duty to provide a timely and fair defense. The issue then, is whether the time period
21  from November 2, 2012, or November 20, 2012, until the determination of coverage on
22  December 31, 2012, constitutes an unreasonable period of time such that St. Paul lost
23  the ability to control the defense of the Yanez Action.

24  The court concludes that St. Paul has met its summary judgment burden to show
25  that the approximately five to seven-week period of time between the provision of
26  documents necessary for a determination of coverage and the decision to provide
27  coverage is reasonable. The court notes that during this period of time there were two
28  national holidays and St. Paul acted relatively expeditiously in analyzing and accepting

coverage. This is a relatively brief period of time compared to the authorities cited by the parties. See i.e. Houck Construction, Inc. v. Zurich Specialities London Ltd., 2007 WL 173911 (C.D. Cal. 2007) (breach of contract claim does not lie for over-12-month delay in providing a defense).

Moreover, the record shows that McMillin was fully represented by counsel throughout the Yanez action and fails to present evidence that it was prejudiced by this brief delay in any cognizable manner. The record also shows that St. Paul requested documents relevant to the determination of coverage issues on August 27, 2012, but McMillin waited almost ten weeks before delivering the Executive Landscape subcontract to St. Paul. The court notes that the subcontract was in the possession of McMillin on August 27, 2012, and it would have been a simple matter to make a copy of the subcontract and forward it to St. Paul. McMillin does not explain why it waited over two months before providing a copy of the subcontract to St. Paul on November 2, 2012. This lackadaisical conduct undermines any claim that McMillin expeditiously and diligently pursued coverage under the Executive Landscape policy. In other words, about one half of the time period from tender to acceptance of coverage is due to McMillin's conduct in failing to provide documentation necessary to determine coverage issues. McMillin simply fails to present sufficient evidence to raise a genuine issue of material fact with respect to any alleged unreasonableness of the approximately five to seven-week delay in analyzing coverage issues under the policy at issue. As McMillin fails to present sufficient evidence to undermine the reasonableness of the time period required by St. Paul to analyze coverage issues, the court grants summary judgment in favor of St. Paul and against McMillin on this claim.

In sum, the court grants summary judgment in favor of St. Paul on the breach of contract Counterclaims, as well as the dependent Counterclaims for bad faith and declaratory relief.

///

Appointment of Independent Counsel

St. Paul moves for partial summary judgment on McMillin's claim that St. Paul owed a duty to its insured to appoint independent counsel. The Court of Appeal cogently summarized California law with respect to entitlement to independent counsel:

> In the landmark <u>Cumis</u> opinion, the court held that if a conflict of interest exists between an insurer and its insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense.
>
> The Cumis opinion was codified in 1987 by the enactment of Civil Code section 2860,2 which "'clarifies and limits'" the rights and responsibilities of insurer and insured as set forth in Cumis. Section 2860 provides, in pertinent part: "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured .... [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."
>
> "As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense. For example, the mere fact the insurer disputes coverage does not entitle the insured to Cumis counsel; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits. (... § 2860, subd. (b); [citations].) The insurer owes no duty to provide independent counsel in these situations because the Cumis rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests." For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential." Some of the circumstances that may create a conflict of interest requiring the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by the insurer's retained counsel (§ 2860, subd. (b); (2) where the insurer insures both the plaintiff and the defendant; (3) where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend; (4) where the insurer pursues settlement in excess of policy limits without the insured's consent and leaving the insured exposed to claims by third parties ; and (5) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her "representation of the one is rendered less effective by reason of his [or her] representation of the other."
>
> As we explained in the last paragraph, not every conflict of interest entitles an insured to insurer-paid independent counsel. Nor does "every reservation of rights entitle an insured to select Cumis counsel. There is no such entitlement, for example, where the coverage issue is independent of,

>or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy. [Citations.] However, independent counsel is required where there is a reservation of rights "and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." (§ 2860, subd. (b),

James 3 Corp. v. Truck Ins. Exchange, 91 Cal.App.4th 1093, 1100-02 (2001) (citations omitted).

McMillin, as the party asserting the claim, bears the initial burden of demonstrating by admissible evidence its claimed right to independent counsel. McMillin first argues that it was entitled to independent counsel because St. Paul "failed to immediately defend McMillin." (Oppo. at p.12:12-13). This argument, untethered to any actual conflict or ethics issue, is unsupported by pertinent authority. McMillin makes no showing that St. Paul's five to seven-week investigation period mandates the appointment of independent counsel.

Next, McMillin contends that St. Paul defended under a full reservation of rights. St. Paul advised McMillin that the coverage provided extended to covered damages arising from Executive Landscape's work. St. Paul also informed McMillin that it would withdraw its coverage if it determined there was no coverage and reserved the right to seek indemnity with respect to claims not covered. Based upon these reservations, McMillin concludes that "appointed counsel could have controlled the outcome of the coverage issue in the underlying action." (Oppo. at p.19:23-24). McMillin also argues that St. Paul:

>-has an "incentive to shape the defense in the underlying action,"
>
>-could control the defense in such a manner to argue that "the damages and not attributable to Executive Landscape's work in order to withdraw a defense,"
>
>-"has an incentive not to file a cross-complaint for indemnity on McMillin's behalf against subcontractors,"
>
>-"has an incentive to minimize Executive Landscape's exposure,"
>
>-"has an incentive [to settle] for a small sun irrespective of damages attributable to its work," and,
>
>-"has an incentive to refrain from providing a release to McMillin to make

sure St. Paul preserves its right to sue McMillin fo reimbursement." (Oppo. at pp. 19:6'24:24). In short, McMillin summarizes its parade of incentives to the following: "St Paul has every incentive to minimize Executive Landscape's liability only, and it could do this through counsel it retained for McMillin." (Oppo. At p.24:5-6).

McMillin' arguments are devoid of evidentiary support. While there are always theoretical incentives, McMillin cites no evidence demonstrating an actual, significant conflict. The defense in the Yanez Action was fully funded by three insurers, including St. Paul, and all claims against Executive were resolved through settlement in January 2016. The parties have completed discovery and McMillin fails to identify any actual conflict giving rise to the appointment of independent counsel. For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential." James 3, 91 Cal.App.4th at 1101. As McMillin fails to identify a significant and actual conflict, St. Paul is entitled to summary judgment on this claim.

In Centex Homes v. St. Paul, 237 Cal.App.4th 23 (2015), the developer argued that the insurer was required to appoint independent counsel. Like the present case, Centex is a developer sued for construction defects by home owners. Centex then commenced an action against 57 subcontractors for the alleged defects. Centex alleged that St. Paul was required to appoint independent counsel because it issued a reservation of rights and had the potential to manipulate the litigation against Centex's interests. Centex alleged that the interests of the insurer and the subcontractor were "irreconcilably adverse" to each other. The trial court granted the demurrer with prejudice and the Court of Appeal sustained the demurrer because the conflict must be actual, and not just potential. Id. at 548-49. Allegations that the insurer had theoretical incentives creating adverse interests "do not cause a conflict requiring independent counsel." Id. at 549.

Here, like in Centex, potential conflicts of interests do not require the

appointment of independent counsel. As McMillin fails to meet its burden on summary judgment to show significant and actual conflicts, the court grants summary judgment in favor of St. Paul and against McMillin on its claim for appointment of independent counsel.

In sum, the court grants summary judgment on the counterclaims for breach of contract, bad faith, and declaratory relief and grants summary adjudication on the counterclaim for appointment of independent counsel.

**IT IS SO ORDERED.**

DATED: September 29, 2016

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties